UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2020 DEC 16  PM 3: 53

CLERK

BY ⎯⎯ UtW ⎯⎯
DEPUTY CLERK

PAMELA K., )
    Plaintiff, )
)
v. ) Case No. 2:18-cv-00108
)
COMMISSIONER OF SOCIAL SECURITY, )
)
    Defendant. )

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR AN ORDER REVERSING THE DECISION OF THE COMMISSIONER AND DENYING THE COMMISSIONER'S MOTION TO AFFIRM**
(Docs. 12 & 13)

Plaintiff Pamela I. Kurutza is a claimant for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments under the Social Security Act ("SSA") and brings this action pursuant to 42 U.S.C. § 405(g) to reverse the decision of the Social Security Commissioner (the "Commissioner") that she is not disabled.[1] (Doc. 12.) The Commissioner moves to affirm. (Doc. 13.) Plaintiff replied on March 1, 2019, at which time the court took the pending motions under advisement.

After her applications for DIB and SSI were denied initially and on reconsideration by the Social Security Administration, Administrative Law Judge ("ALJ") Lisa Groeneveld-Meijer found Plaintiff was not disabled based on her conclusion that Plaintiff can perform jobs that exist in significant numbers in the national economy.

---

[1] Disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant's "physical or mental impairment or impairments" must be "of such severity" that the claimant is not only unable to do any previous work but cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

Plaintiff identifies three errors in the ALJ's disability determination: (1) the ALJ erred in giving little weight to the opinions of Plaintiff's treating mental health providers even though no medical opinion evidence rebutted their conclusions; (2) the ALJ erred in giving great weight to the opinion of Dr. Haynes, a testifying medical expert, and little weight to the opinions of a treating nurse practitioner regarding Plaintiff's functional abilities in connection with handling and fingering; and (3) the ALJ erred in finding two jobs with 40,000 positions available in the national economy to be a significant number. Plaintiff seeks a remand for a calculation of benefits.

Plaintiff is represented by Phyllis E. Rubenstein, Esq. The Commissioner is represented by Special Assistant United States Attorney Fergus J. Kaiser.

I.   **Procedural History.**

Plaintiff filed her first application for DIB and SSI on February 23, 2016, alleging a disability onset date of January 1, 2010, and identifying the following impairments: fibromyalgia, carpal tunnel syndrome in both hands, tendonitis, depression, bulged discs in her back and neck, bursitis and chronic pain, migraines, and sleep apnea. *See* AR 452. She amended the alleged onset date to August 1, 2015. Her claim was denied initially on May 25, 2016 and upon reconsideration on August 24, 2016. Plaintiff timely filed a written request for a hearing, which was held before ALJ Groeneveld-Meijer via videoconference on February 7, 2017. Plaintiff appeared in person and was represented by counsel. Both Plaintiff and Vocational Expert ("VE") Elizabeth LaFlamme testified.

Following the hearing, Plaintiff attended a consultative examination with Paul M. Ross, MD on March 21, 2017. On March 29, 2017, Dr. Ross's report and medical source statement was provided to Plaintiff. Plaintiff submitted questions for Dr. Ross on April 14, 2017, which he did not answer. ALJ Groeneveld-Meijer apparently did not direct him to answer them,[2] or provide an explanation for not doing so.

---

[2] The questions posed were as follows:
- What do you recall Ms. Kurutza telling you regarding the condition of her left hand following surgery?
- What do you recall Ms. Kurutza explaining why she did not have surgery on her right hand?

2

On September 14, 2017, ALJ Groeneveld-Meijer held a supplemental video hearing at which Plaintiff appeared in person and was represented by counsel. Medical expert James M. Haynes, MD ("Dr. Haynes"), a neurologist[3], and VE Whitney Eng testified. Medical Expert Alfred Jonas, MD, who is a psychiatrist, was scheduled to appear and testify regarding Plaintiff's mental health but did not attend because of technical difficulties. There is no explanation as to why the hearing was not continued so that he could do so.

On October 26, 2017, ALJ Groeneveld-Meijer issued an unfavorable decision. Plaintiff filed a timely appeal before the Appeals Council, which denied review on May 8, 2018. As a result, the ALJ's disability determination stands as the Commissioner's final decision.

## II. The ALJ's October 26, 2017 Decision.

In order to receive DIB or SSI under the SSA, a claimant must be disabled on or before the claimant's date last insured. A five-step, sequential-evaluation framework determines whether a claimant is disabled:

(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the

---

- What do you recall Ms. Kurutza telling you regarding her difficulty holding a coffee cup, buttoning clothes, lifting a gallon of milk, etc.?
- How many and where are tattoos on Ms. Kurutza's trunk and upper extremities?
- Please explain what you meant when you wrote Ms. Kurutza "mounted the examining table with some histrionic difficulty."
- Please specify which "prior IME" you are referring to in the section "Review of Imaging Studies."
- Please indicate which medical records you reviewed other than the four documents listed under "Review of Medical Records."
- Please explain where your office is located in relation to a garage.
- Please confirm whether or not you gave Ms. Kurutza a paper gown to change into and said, "don't rip it; I have another patient after you."
- Please specify which "IME" you are referring to in the Medical Source Statement.

*See* AR 559.

[3] Plaintiff's counsel noted that a rheumatologist was supposed to testify to which the ALJ responded that there "may not have been a rheumatologist available." (AR 156.)

> specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v)). "The claimant has the general burden of proving that he or she has a disability within the meaning of the Act, and bears the burden of proving his or her case at [S]teps [O]ne through [F]our of the sequential five-step framework established in the SSA regulations[.]" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal quotation marks and citation omitted). At Step Five, "the burden shift[s] to the Commissioner to show there is other work that [the claimant] can perform." *McIntyre*, 758 F.3d at 150 (alterations in original) (internal quotation marks omitted).

At Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity since August 1, 2015, her amended onset date. At Step Two, the ALJ concluded Plaintiff had the following severe impairments: degenerative disc disease, obstructive sleep apnea, migraine headaches, bilateral occipital neuralgia, bilateral median neuropathy status post left carpal tunnel release, major depressive disorder, fibromyalgia, and irritable bowel syndrome.

At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listings. With respect to Plaintiff's back condition, the ALJ observed that a recent MRI of Plaintiff's lumbar spine revealed an L5-S1 right paracentral disc protrusion/herniation with significant mass effect on the traversing S1 nerve root, mild L4-5 and L5-S1 spinal stenosis, and moderate right and mild left L5-S1 neural foraminal narrowing. However, the ALJ determined Plaintiff's medical record did not reflect neuroanatomic distribution of pain, limitations of motion of the spine, spinal archnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication. Plaintiff's clinical examinations showed her neurological examination was nonfocal and her straight leg raises were negative.

The ALJ further noted Plaintiff's sleep apnea was controlled by the use of CPAP or BiPAP machines; that Plaintiff continued to be capable of performing fine and gross motor movements without loss of dexterity or strength in connection with her carpal tunnel syndrome and fibromyalgia; that the record did not show Plaintiff's migraine headaches significantly interfered with her activity during the day; and that Plaintiff did not undergo sustained weight loss or present with findings on examination consistent with the Listing criteria for irritable bowel syndrome.

Regarding Plaintiff's mental health conditions, the ALJ found Plaintiff had moderate limitations in concentration, persistence, and pace but had no limitations in understanding, remembering, or applying information; interacting with others; and adapting or managing herself. As the Commissioner points out, the ALJ noted that Plaintiff left her last employment for reasons unrelated to her physical and mental conditions, collected unemployment, and continued to look for work.

At Step Four, the ALJ determined Plaintiff had the Residual Functional Capacity ("RFC") to:

> [P]erform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she is capable of standing and walking up to two hours in an eight hour day and sitting up to six hours. She should not climb ladders, ropes, or scaffolds. She may occasionally stoop, kneel, crouch, crawl, and balance. She requires work that allows the ability to change positions at her option at least every [thirty] minutes or the work must be the kind that can be performed seated or standing at the option of the employee. Overhead reaching is limited to occasional, but she can perform frequent reaching in all other directions. She can engage in frequent handling and fingering. In terms of the environment, there should be no concentrated exposure to vibration, extreme temperature, humidity, or airborne irritants such as dusts, fumes, odors, gases. She can perform work that does not include: concentrated exposure to potential hazards such as moving machinery and unprotected heights; or more than moderate noise levels. Day to day, the work should be routine with no fast pace, meaning no belt paced or timed work. She is capable of brief and occasional interaction with the general public.

(AR 16.)

Based on the VE's testimony, the ALJ concluded that Plaintiff could not perform her past relevant work as a general office clerk or department manager with the limitations identified in the RFC. She noted that Plaintiff was thirty-five years old as of the alleged onset date, placing her within the category of "younger" individuals as defined by the regulations, and that Plaintiff had a high school education. *Id.* at 29.

Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined at Step Five that Plaintiff could perform jobs that exist in significant numbers in the national economy, including "addressing clerk" and "document preparer[.]" *Id.* The ALJ approximated there exist 12,000 positions in the national economy for addressing clerk and 28,000 positions for document preparer, totaling approximately 40,000 jobs available to Plaintiff. For this reason, the ALJ determined Plaintiff was not disabled from August 1, 2015 through October 26, 2017, the date of her decision.

### III. Conclusions of Law and Analysis.

#### A. Standard of Review.

In reviewing the Commissioner's decision, the court "conduct[s] a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Cichocki v. Astrue*, 729 F.3d 172, 175-76 (2d Cir. 2013) (citation and internal quotation marks omitted). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (internal quotation marks omitted).

It is the Commissioner who resolves evidentiary conflicts and determines credibility issues, and the court "should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998); *see also Aponte v. Sec'y, Dep't of Health & Human Servs. of U.S.*, 728 F.2d 588, 591 (2d Cir. 1984) (noting "genuine conflicts in the medical evidence are for the Secretary to resolve"). Even if the court could draw different conclusions after an independent review of the record, the court must uphold the Commissioner's decision when it is supported by substantial

evidence and when the proper legal principles have been applied. *See* 42 U.S.C. § 405(g); *McIntyre*, 758 F.3d at 149 ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.").

### B. Whether the ALJ Erred in Giving Little Weight to the Medical Opinions of Plaintiff's Treating Mental Health Providers.

Plaintiff argues that the ALJ committed reversible error in giving little weight to the medical opinions of Eliza Anti, N.P. ("NP Anti"), James Greenleaf, ARNP ("ARNP Greenleaf"), and Abigail Tobias, L.P.M. ("Ms. Tobias"), regarding the functional limitations associated with Plaintiff's mental health because no medical opinion rebutted their conclusions that Plaintiff suffers from severe impairments of depression, anxiety, and/or posttraumatic stress disorder ("PTSD"), with marked difficulties in multiple areas of functioning.

When making a determination of disability, an ALJ must consider "all of the available evidence in the individual's case record[,]" including the opinions of medical sources. SSR 06-03p, 2006 WL 2329939, at *1 (Aug. 9, 2006).[4] The ALJ will consider the following factors for "every medical opinion [he or she] receive[s]": (1) whether the source examined the claimant; (2) whether the source is a treating source, and, if so, the length of the treatment relationship and frequency of examination, and the nature and extent of the treatment relationship; (3) whether the opinion is supported by relevant evidence, "particularly medical signs and laboratory findings"; (4) the consistency of the opinion "with the record as a whole"; (5) whether the opinion is authored by "a specialist" and is "about medical issues related to his or her area of specialty"; and (6) other factors "which tend to support or contradict the medical opinion." 20 C.F.R. §§ 404.1527(c), 416.927(c); *accord* SSR 06-03p, 2006 WL 2329939, at *4-5.

---

[4] SSR 06-03p was rescinded effective March 27, 2017. *See* Rescission of Soc. Sec. Rulings 96-2p, 96-5p, and 06-03p, Fed. Reg. 82, 15,263 (Mar. 27, 2017). Because Plaintiff filed her DIB and SSI applications prior to March 27, 2017, SSR 06-03p applies to her claims. *See id.* ("This rescission will be effective for claims filed on or after March 27, 2017."); *Harrison v. Comm'r of Soc. Sec.*, 2018 WL 3153399, at *3 n.4 (W.D.N.Y. June 28, 2018) ("SSR 06-03p has been rescinded by Federal Register Notice Vol. 82, No. 57, page 15263, but remains in effect for claims filed before March 27, 2017.").

Because NP Anti and ARNP Greenleaf are nurse practitioners and Plaintiff filed her DIB and SSI applications prior to March 27, 2017, they were not "acceptable medical sources" under the applicable SSA regulations and thus were not "treating sources." SSR 06-03p, 2006 WL 2329939, at *2 (stating "only 'acceptable medical sources' can be considered treating sources" and classifying "nurse practitioners" as "not 'acceptable medical sources'"); *see also Cherry v. Comm'r of Soc. Sec. Admin.*, 813 F. App'x 658, 661 (2d Cir. 2020) (holding ALJ "properly discounted" nurse practitioner's medical opinion because she was "not an acceptable medical source when [the plaintiff] filed his claim."). In contrast, Ms. Tobias is a Licensed Psychologist Master whose opinions qualify as treating source opinions under the applicable regulations. SSR 06-03p, 2006 WL 2329939, at *1 (classifying "[l]icensed or certified psychologists" as "acceptable medical sources") (internal quotation marks omitted).

Pursuant to the treating physician rule, an ALJ considering the opinion of a claimant's treating physician must decide "whether the opinion is entitled to controlling weight." *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). A treating physician's opinion is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

In the Second Circuit,

> It is well-settled that "the ALJ cannot arbitrarily substitute his [or her] own judgment for a competent medical opinion. . . . [W]hile an [ALJ] is free to resolve issues of credibility as to the lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician [who submitted an opinion to or] testified before him."

*Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (quoting *McBrayer v. Sec'y of Health & Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983)); *see also Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) ("The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion.").

"[A] circumstantial critique by non-physicians, however thorough or responsible, must be overwhelmingly compelling in order to overcome a medical opinion." *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 862 (2d Cir. 1990). Because this is a high standard, an ALJ generally commits reversible error where he or she relies on his or her own interpretation of the medical evidence and does not "cite *any* medical opinion to dispute [a] treating physicians' conclusions[.]" *Balsamo*, 142 F.3d at 81 (holding ALJ erred in rejecting treating physician opinions as non-controlling because they did not "report significant clinical findings to support their opinion that the claimant is totally disabled and unable to work") (internal quotation marks and alteration omitted); *see also Griffel v. Berryhill*, 2017 WL 4286254, at *9 n.10 (E.D.N.Y. Sept. 26, 2017) (noting an "ALJ may only reject [a treating physician's] opinions based on contradictory medical opinions, not based on the ALJ's interpretation of Plaintiff's medical records"). In this case, the ALJ made a "common[]sense interpretation of the medical evidence of record, including, the claimant's testimony, her daily activities, and observations of her functioning" and rendered her own opinion regarding Plaintiff's mental impairments. (AR 28.) This was not only improper, it was not supported by substantial evidence.

On December 5, 2016, Ms. Tobias authored a Mental RFC Statement in which she assessed Plaintiff as having a major depressive disorder and PTSD and determined her prognosis was "poor." (AR 1179.) She opined that Plaintiff would be precluded ten percent of the time from sustaining an ordinary routine without special supervision; accepting instructions and responding appropriately to criticism from supervisors; maintaining socially appropriate behavior; and responding appropriately to changes in the work setting. She further found that Plaintiff would be precluded fifteen percent of the time from maintaining attention and concentration for extended periods of time, performing activities within a schedule, maintaining regular attendance and being punctual, working in coordination with or in proximity to others without being distracted by them or distracting to them, completing a normal workday and workweek without interruptions from psychologically based symptoms, performing at a consistent pace, and

9

getting along with coworkers or peers without distracting them or exhibiting behavioral extremes.

When asked what percent of an eight-hour workday, five days per week, in a competitive environment would Plaintiff be "off task[,]" Ms. Tobias indicated more than thirty percent. (AR 1181.) She estimated that Plaintiff would be likely to be absent from work five days or more per month as a result of her physical or mental impairments or need for ongoing medical treatment. She further estimated Plaintiff would be unable to complete an eight-hour workday five days or more per month as a result of her physical or mental impairments or need for ongoing medical treatment. Compared to an average worker, Ms. Tobias anticipated Plaintiff would be less than fifty percent as efficient in performing a job for eight hours per day, five days per week.

On April 4, 2017, Ms. Tobias submitted a Temporary Medical Deferment wherein she opined that Plaintiff's primary diagnoses of major depression and PTSD caused her to "struggle[] [with] motivation, emotion dysregulation, and concentration." (AR 1336.) Ms. Tobias noted Plaintiff's chronic back pain exacerbates her symptoms. She expected Plaintiff's mental health impairments would last for over sixty days and observed she saw Plaintiff once every week. In response to the question, "[c]ould the individual, with accommodations, engage in *any* activities other than treatment[,]" Ms. Tobias responded "[n]o." *Id.* In an accompanying Summary of Identified Diagnosis, Ms. Tobias stated Plaintiff was diagnosed with major depression on July 25, 2014 and PTSD on October 17, 2016, that she began treatment with Ms. Tobias in 2014, and that Plaintiff has been attending weekly sessions since October 17, 2016 as her physical health and other medical appointments allow.

At Step Four, the ALJ gave Ms. Tobias's opinions "little weight" because they were "not well supported by or consistent with the medical evidence of record" and "overstates the impact that the claimant's symptoms have on her ability to function in a work environment." (AR 26.) The ALJ did not cite to any contradictory medical opinions but rather identified what she deemed were inconsistencies in Ms. Tobias's treatment notes. *See Balsamo*, 142 F.3d at 80 (holding the "ALJ erred in rejecting the opinions of

10

these [treating] physicians solely on the basis that the opinions allegedly conflicted with the physicians' own clinical findings"). Even assuming *arguendo* that this was a "good reason" for rejecting a treating opinion, it was not supported by substantial evidence because Ms. Tobias's treatment notes are not internally inconsistent.

On July 25, 2014 during Plaintiff's intake interview, Ms. Tobias diagnosed Plaintiff with major depressive disorder, "[s]evere [without] psychosis, recurrent" and recommended weekly individual therapy. (AR 1242.) Ms. Tobias notes starting in March of 2016 reflect that Plaintiff's depression was worsening.[5] Upon referral from Ms. Tobias, Ann Burzynski, APRN, determined in a March of 2016 mental status examination that Plaintiff was polite and oriented but depressed, anxious, somewhat tearful, and emotionally overwhelmed. She recommended Plaintiff continue a trial of antidepressant medications. In Plaintiff's October of 2016 Individual Plan of Care, Ms. Tobias opined Plaintiff has a "history of depression and trauma" which includes "feeling down 'all of the time,' demotivation, anhedonia, fatigue, and feelings of worthlessness." *Id.* at 1199. By November of 2016, Plaintiff was experiencing "growing difficulty with concentration and memory as well as revisiting skills for managing anxiety." (AR 1196.) As the ALJ acknowledged, Plaintiff missed several appointments with Ms. Tobias but there is no evidence to support the ALJ's further conclusion that these absences were related to "increased stressors and medical issues and [were] not reflective of [Plaintiff's] baseline level of functioning." *Id.* at 26.

The ALJ cited the treatment notes of "other providers in the record" as demonstrating that Plaintiff's "baseline level of functioning" was not "so limited that she could not maintain attention or concentration, work near others, be punctual, or maintain attendance." *Id.* The ALJ, however, did not identify the treatment notes in question or

---

[5] *See, e.g.*, AR 926 (at March 2, 2016 session, characterizing Plaintiff as "[u]pset, depressed, and expressing hopelessness" and remarking that Plaintiff's depression was "worsening"); *id.* at 1190 (at October 27, 2016 session, "[t]he main focus . . . was validation of [Plaintiff's] increasing frustration, depression[,] and hopelessness"); *id.* at 1192 (at November 3, 2016 session, stating Plaintiff became "a bit dysregulated and angry but was able to utilize some of the skills and reregulate").

11

event identify the other providers upon which she relied. This does not constitute the "overwhelmingly compelling" evidence sufficient to "overcome" a treating physician's opinion. *Wagner*, 906 F.2d at 862; *see also Wilson v. Colvin*, 213 F. Supp. 3d 478, 487 (W.D.N.Y. 2016) (holding ALJ's conclusion that treating physician's opinions were inconsistent with the entire record did not constitute a good reason to discount a treating source opinion where ALJ did not provide an explanation or "identify the alleged inconsistencies"); *Scholtisek v. Colvin*, 110 F. Supp. 3d 464, 478 (W.D.N.Y. 2015) ("It is not enough for the ALJ to simply say that [a treating physician's] findings are inconsistent with the rest of the record. The ALJ [must] provide[] reasons which explain that inconsistency with these other parts.") (alterations in original) (quoting *Sutherland v. Barnhart*, 322 F. Supp. 2d 282, 291 (E.D.N.Y. 2004)).

Plaintiff's other mental health treatment providers offered opinions similar to those of Ms. Tobias and the ALJ accorded them "little weight" as well. (AR 24-26.)[6] On December 2, 2015, NP Anti assessed Plaintiff as having "[d]epression with anxiety" with symptoms of hypersomnolence, [forgetfulness], and decreased motivation. *Id.* at 650. She opined that Plaintiff is "a patient with very poorly controlled depression affecting her life in various, debilitating ways, not the least of which has been the impact her depression has had on her experience of pain, which we know to be strongly correlated." (AR 84.) In response to these persistent conditions, NP Anti prescribed new medication which Plaintiff reported still left her with "bouts of extreme exhaustion, most days, will just need to go to sleep, can't move, can't think." *Id.* at 661. ARNP Greenleaf completed a psychiatric evaluation of Plaintiff on September 27, 2016 and assessed her as having

---

[6] *See, e.g.,* AR 1176 (on November 28, 2016, NP Anti opined Plaintiff had marked limitations in understanding, remembering, and carrying out complex instructions and making judgments on complex work-related activities and that Plaintiff's "depression makes her functioning unpredictable and unreliable" as she "may have periods of uncontrollable crying or anger at any point, depending on [the] circumstances/triggers"); AR 1236 (on December 21, 2016, ARNP Greenleaf opined that Plaintiff had moderate difficulty in understanding, remembering, and carrying out complex instructions and making judgments on complex work-related activities and that Plaintiff's "anxiety worsens in social situations [and] high-stress environments, which significantly impair her cognition, memory [and judgment]").

12

"[r]ecurrent major depression." *Id.* at 1145. On February 27, 2017, he conducted a PHQ9 depression screening and classified Plaintiff as having "[s]evere" depression. *Id.* at 1369. In response to Plaintiff's reports that she was "doing poorly" and "feeling increasingly depressed[,]" ARNP Greenleaf again changed Plaintiff's medications. *Id.* He concluded that "except for a brief 2 month stretch last spring, her level of depression has been at least of moderate severity." (AR 81.)

Although NP Anti described Plaintiff's depression on occasion as being in partial remission and several of her mental status examinations indicated that Plaintiff's mood was appropriate or unremarkable, "[c]ycles of improvement and debilitating symptoms [of mental illness] are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Estrella*, 925 F.3d at 97 (alteration in original) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014)). This is particularly true where the same mental health treatment provider opined that overall, Plaintiff's depression was sufficiently debilitating to render her off-task for fifteen percent or more of a workday in certain areas of functioning.

State-agency non-examining consultants Edward Hurley, PhD, and Howard Goldberg, PhD opined that Plaintiff's mental health impairments were not severe which ALJ Groeneveld-Meijer properly gave "little weight" because "additional treatment notes admitted to the record show that [Plaintiff]'s depression does result in more than minimal limitations in her functioning[.]" (AR 28.) Having accorded little weight to the opinions of Plaintiff's mental health treatment providers and little weight to the opinions of the non-examining state-agency consultants, the ALJ's RFC was grounded on her own opinion of the medical evidence and she conceded as much.

"[A]n RFC determination is a medical determination, [and] an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error." *Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010). In light of the nature of Plaintiff's depression and the consensus from Plaintiff's treating mental

health providers that her depression significantly impaired her ability to work, the ALJ was not free to offer her own interpretation of the medical evidence. *See Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (holding ALJ improperly "set her own expertise against that of the treating physician" in determining that the plaintiff could complete sedentary work based on reported absence of muscle spasms because "as a lay person, the ALJ simply was not in a position to know whether the absence of muscle spasms would in fact preclude the disabling loss of motion described by the [treating physician] in his assessment") (footnote, alterations and internal quotation marks omitted); *Balsamo*, 142 F.3d at 81 (finding ALJ did not "choose between properly submitted medical opinions, but rather improperly set his own expertise against that of physicians who submitted opinions to him" by stating "without citing to any medical opinion that 'there is no atrophy of any muscle groups indicative of disuse for the purpose of avoiding discomfort as one would expect . . . based on the claimant's allegation of constant and totally disabling pain'") (alterations and internal quotation marks omitted).

Although the RFC contains limitations addressing Plaintiff's mental health, it does not address Ms. Tobias's opinion that Plaintiff would be off-task more than fifty percent of the day and would be absent from work more than five days per month. *See Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (noting to observe "that a person can perform simple and repetitive tasks says nothing about whether the individual can do so on a sustained basis, including, for example, over the course of a standard eight-hour work shift" and remanding where the RFC was "altogether uninformed by considerations of off-task time or unplanned leave"). If Ms. Tobias's opinions were fully credited, the VE testified Plaintiff would be precluded from full-time work. (AR 192-93.) An error is not harmless if it would materially impact a disability determination.

On remand, the ALJ has an affirmative duty to either accord Ms. Tobias's medical opinions controlling weight or provide good reasons for rejecting them. *See Rosa*, 168 F.3d at 79-80 (holding that when confronted with a vague treating physician opinion, "the ALJ should have taken steps directing [Plaintiff] to ask [the treating physician] to

14

supplement his findings with additional information" rather than substitute his judgment for that of the physician).

### C. Whether the ALJ Erred in Weighing the Medical Opinion Evidence Related to Plaintiff's Handling and Fingering.

Plaintiff contends that the ALJ erred in giving great weight to Dr. Haynes's testimony because it was deficient, vague, and inconsistent and that contrary to the ALJ's findings, he neither summarized the medical evidence nor made findings on any medically determinable impairments. Plaintiff further asserts that the ALJ erred in rejecting the opinions of Dr. Haynes and NP Anti regarding Plaintiff's ability to handle and finger.

An ALJ generally gives "more weight to the medical opinion of a source who has examined [a plaintiff] than to the medical opinion of a medical source who has not examined [a plaintiff,]" 20 C.F.R. §404.1527(c)(1), however "state agency medical and psychological consultants . . . are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." *Smith v. Colvin*, 17 F. Supp. 3d 260, 268 (W.D.N.Y. 2014); 20 C.F.R. § 404.1513a(b)(1). As a result, the opinions of non-examining State agency consultants "may constitute substantial evidence if they are consistent with the record as a whole." *Smith*, 17 F. Supp. 3d at 268 (internal quotation marks omitted). Indeed, provided they are supported by substantial evidence, these opinions may be accorded more weight than those of a treating source. *See Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995) (finding that the regulations "permit the opinions of non-examining sources to override treating sources' opinions provided they are supported by evidence in the record").

Dr. Haynes testified that Plaintiff was capable of lifting 20 pounds occasionally and 10 pounds frequently. He stated that he would not impose postural restrictions but would "keep [Plaintiff] off of ladders and scaffolds, heights." (AR 175.) He also testified that Plaintiff should have position breaks but did not know how often she might need them, and that Plaintiff could walk for as long "as tolerated." *Id.* at 177. He opined that Plaintiff was not capable of any fingering, at least on a temporary basis, due to her carpal

15

tunnel syndrome. When asked about Dr. Ross's diagnosis of fibromyalgia and Dr. Nevin's assessment of fibromyalgia, Dr. Haynes responded: "I don't know about fibromyalgia. But I think there's differing exams. Dr. Ross found her tender everywhere. In other words, the picture was there's a whole lot of smoke, and I couldn't see the fire." (AR 179-80.)

In September 2015, treatment notes indicate that Plaintiff had normal gait and balance, and full strength in her upper and lower body. (AR 75.) In October 2015, Plaintiff had a normal gait, full strength in her upper and lower extremities, and a negative straight leg test. *Id.* at 952. A March 2016 physical examination revealed normal strength in her upper and lower extremities. The only abnormality was that Plaintiff was unable to do a full squat to the floor. *Id.* at 1263. In April 2016, NP Anti documented Plaintiff's normal gait, normal bilateral lower extremity strength and a mildly reduced range of motion in the lower back. *Id.* at 672. In July 2016, Plaintiff's lower extremity motor exam, sensory exam, and reflex exam were all normal and her straight-leg test was negative. *Id.* at 1117. At a March 2017 examination, Plaintiff exhibited no signs of limited mobility and had full range of motion in both hips although she had some histrionic difficulty mounting the examining table. *Id.* at 1330. Likewise, in a September 2017 examination, she exhibited normal gait and full strength though she also was assessed to have median neuropathy of both upper extremities. *Id.* at 1465. Dr. Haynes's assessment that Plaintiff could perform light work with certain additional limitations was therefore supported by substantial evidence in the record.

At Step Four, the ALJ found that Dr. Haynes's opinion was entitled to "great weight" because even though Dr. Haynes was not a treating or examining provider, "he is in the unique position of having reviewed the majority of the medical evidence himself." (AR 24.) The ALJ found that Dr. Haynes provided a well-supported opinion containing specific references to the medical evidence. Regarding Plaintiff's ability to handle and finger, Dr. Haynes opined:

> I think that sedentary work ought to be easy, well within her capabilities, with the exception [that] if she does have carpal tunnel then that needs to be

16

> dealt with. And that does sound like an electrical abnormality that is severe. So I guess I would say no fingering, but that's temporary, and needs to be looked at down the line.

(AR 175.) The ALJ clearly did not give this aspect of his testimony "great weight," she instead appeared to disregard it entirely and concluded that Plaintiff could frequently finger, but provided no reason for doing so.

In a medical source statement dated November 2016, NP Anti opined that Plaintiff could only occasionally handle and finger. At Step Four, the ALJ gave NP Anti's "opinion regarding the claimant's physical functioning" some weight, finding that it was "generally consistent with her own treatment notes," and "is consistent with the clinical examinations of her hands in the context of the bilateral carpal tunnel syndrome diagnoses[,]" however, the ALJ then appeared to contradict herself, finding that "these clinical examinations, as noted above, do not consistently show significant deficits in grip strength, dexterity, or sensation," so she found that Plaintiff could frequently handle and finger. (AR 24.)

An RFC determination represents "the most [a claimant] can still do despite [her] limitations[,]" and is determined based on "all the relevant evidence" in the record, including evidence of both severe and non-severe medically determinable impairments. 20 C.F.R. § 404.1545(a)(1)-(2). "In deciding a disability claim, an ALJ is tasked with 'weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Benman v. Comm'r of Soc. Sec.*, 350 F. Supp. 3d 252, 256-57 (W.D.N.Y. 2018) (quoting *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). "[A]n ALJ is free . . . to choose between properly submitted medical opinions" in rendering his or her analysis, *Balsamo*, 142 F.3d at 81 (internal alterations, quotation marks, and citations omitted), and need not "reconcile every conflicting shred of medical testimony" as long as the ALJ "acknowledge[s] relevant evidence or explain[s] [her] implicit rejection of it." *Falcon v. Apfel*, 88 F. Supp. 2d 87, 90 (W.D.N.Y. 2000) (citations omitted).

17

[A]n ALJ may not 'cherry pick' medical opinions that support his or her opinion while ignoring opinions that do not." *Thomas v. Berryhill*, 337 F. Supp. 3d 235, 244 (W.D.N.Y. 2018). In this case, the ALJ ignored portions of the only opinion she accorded great weight in finding that Plaintiff could frequently handle and finger. "The obligation to explain why certain elements of an opinion were not adopted is triggered when 'the RFC assessment conflicts with an opinion from a medical source[.]" *Marshall L. v. Berryhill*, 2018 WL 2192191, at *11 (W.D.N.Y. May 14, 2018) (quoting SSR 96-8p, 1996 WL 374184, at *7 (Jul. 2, 1996). It was thus error for the ALJ to fail to explain why she did not adopt the limitations on handling and fingering found in both NP Anti's and Dr. Haynes's medical source opinions.[7] *See Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) ("The requirement of reason giving exists, in part, to let claimants understand the disposition of their cases, even – and perhaps especially – when those dispositions are unfavorable"). This error was not harmless because the VE expert testified that if handling and fingering were limited to occasional, no jobs would be available. (AR 192.) A remand is therefore required with regard to Plaintiff's ability to handle and finger during the relevant period.

### D. Whether the ALJ Erred in Finding Jobs with a Total of 40,000 Positions Nationally Is a Significant Number.

Plaintiff contends that the ALJ committed legal error in finding that the 40,000 jobs the VE identified for Plaintiff to perform constituted a "significant" number of jobs in the national economy. The Commissioner counters that at Step Five, the Commissioner need only show that Plaintiff can perform one job in significant numbers in the national economy.

At Step Five, the Commissioner bears the burden of demonstrating there are a "significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience." *McIntyre*, 758 F.3d at 150 (citing 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v)).

---

[7] To the extent the ALJ intended to rely on the opinion of Dr. Ross, that is not apparent and is inconsistent with her decision to accord his opinion only some weight.

18

According to SSA regulations, "[w]ork exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which [the claimant is] able to meet with [his or her] physical or mental abilities and vocational qualifications." 20 C.F.R. §§ 404.1566(b), 416.966(b). In other words, "[t]he Commissioner need show only one job existing in the national economy" in significant numbers that Plaintiff can perform to find she is not disabled at Step Five. *Bavaro v. Astrue*, 413 F. App'x 382, 384 (2d Cir. 2011) (summary order).

"[I]solated jobs that exist only in very limited numbers in relatively few locations" do not meet the regulatory definition of "work which exists in the national economy." 20 C.F.R. §§ 404.1566(b), 416.966(b). Courts in the Second Circuit "have generally held that what constitutes a 'significant' number is fairly minimal." *Roe v. Colvin*, 2015 WL 729684, at *7 (N.D.N.Y. Feb. 19, 2015) (quoting *Fox v. Comm'r of Soc. Sec.*, 2009 WL 367628, at *20 (N.D.N.Y. Feb. 13, 2009)). 40,000 positions in the national economy for two jobs "satisfies this low threshold[,]" and the ALJ did not err in finding that figure to be a significant number. *See id.* (finding 44,000 jobs to be a significant number); *see also Gray v. Colvin*, 2014 WL 4146880, at *6 (W.D.N.Y. Aug. 19, 2014) (holding "it cannot be said that totals of over 16,000 jobs nationally and 60 regionally . . . are not 'significant' as a matter of law, given the low threshold evidently required").

E.    **Whether Remand for the Calculation of Benefits Is Warranted.**

Plaintiff seeks a remand for a calculation of benefits, arguing that the medical record provides persuasive proof that she was disabled as of August 1, 2015. Remand for the calculation of benefits is appropriate in cases where "the records provided persuasive evidence of total disability that rendered any further proceedings pointless." *Williams v. Apfel*, 204 F.3d 48, 50 (2d Cir. 1999); *see also Vargas v. Sullivan*, 898 F.2d 293, 296 (2d Cir. 1990) (remanding for calculation of benefits where there was an "infinitesimal likelihood that employment of any kind would be available" to claimant). Because the ALJ's decision reflects the ALJ's own interpretation of the medical evidence as well as cherry-picking from medical opinions to support a particular result, the court cannot predict the outcome of a properly rendered determination. Remand for the calculation of

19

benefits is therefore not warranted. *See James T. v. Berryhill*, 2020 WL 2507681, at *7 (D. Vt. May 15, 2020) (declining to remand for calculation of benefits where "the ALJ's decision does not permit the court to fully evaluate his reasoning").

## CONCLUSION

For the foregoing reasons, the court GRANTS Plaintiff's motion for an order reversing the Commissioner (Doc. 12), DENIES the Commissioner's motion to affirm (Doc. 13), and REMANDS this case for further proceedings consistent with this Opinion and Order.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 16th day of December, 2020.

Christina Reiss, District Judge
United States District Court